UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM AUGUSTUS WELCH (#199544),

|  |  |
|---|---|
| Plaintiff, | CASE NO. 2:12-CV-13172<br>JUDGE PAUL D. BORMAN<br>MAGISTRATE JUDGE PAUL J. KOMIVES |

v.

GLENN KUSEY,
BRAD PURVES and
DON SPAULDING,

Defendants,

_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS' SEPTEMBER 24, 2012 SUMMARY JUDGMENT MOTION (Doc. Ent. 11)**

Table of Contents

I.     RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.    REPORT: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
       A.     Plaintiff's July 19, 2012 Complaint Concerns the Adequacy of the August 2011 Ramadan Menu.
              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
       B.     There Is a Genuine Issue of Material Fact that Plaintiff's First Amendment Right to Free Exercise
              Was Substantially Infringed by Subjecting Him to a Ramadan Menu that Was Approximately Half
              of the Daily Nutritional and Caloric Intake of the Regular Menu at SRF and Regarding the
              Reasonableness of Such Practice.
              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
       C.     To the Extent Plaintiff Alleges a Claim under RLUIPA, There Is a Genuine Issue of Material Fact
              that Subjecting Plaintiff to a Ramadan Menu that Was Approximately Half of the Daily Nutritional
              and Caloric Intake of the Regular Menu at SRF Substantially Burdened his Religious Exercise.
              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
       D.     Defendant Kusey Is Entitled to Summary Judgment as to Plaintiff's Claims against Him, Because
              His Only Role in this Case Involved His Denial of Plaintiff's Step I Grievances or an Alleged
              Failure to Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24
       E.     Defendants Purves and Spaulding are Entitled to Summary Judgment as to Plaintiff's Claims
              against Them in Their Personal Capacities for Damages, because they are entitled to qualified
              immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
       F.     However, Defendants Purves and Spaulding Are Not Entitled to Summary Judgment as to
              Plaintiff's Claims against Them in Their Official Capacities for Injunctive or Declaratory Relief.
              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

III.   NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

I.      **RECOMMENDATION:** The Court should grant in part and deny in part defendants'

September 24, 2012 motion for summary judgment (Doc. Ent. 11).

II.     **REPORT:**

A.      **Plaintiff's July 19, 2012 Complaint Concerns the Adequacy of the August 2011 Ramadan Menu.[1]**

**1.**      William Augustus Welch (#199544) is currently incarcerated at the Michigan

Department of Corrections (MDOC) Saginaw Correctional Facility (SRF) in Freeland, Michigan,

where he is serving a life sentence.[2]

On July 19, 2012, while incarcerated at SRF, Welch filed a pro se, unsigned prisoner

civil rights complaint against Donald Spaulding, an SRF Food Service Director; Glenn Kusey,

an SRF Acting Food Service Supervisor; and Brad Purves, the MDOC's Correctional Facilities

Administration Food Service Program Manager.  Doc. Ent. 1 at 1-7 (Complaint), Doc. Ent. 1 at

8-42 (Exhibits A-J); *see also* Doc. Entries 8, 9 & 10 (Appearances of Counsel);[3] Doc. Entries 11-

2, 11-3 & 11-4.[4]

**2.**      The facts underlying plaintiff's complaint stem from plaintiff's diet during the Islamic

Holy month of Ramadan (August 2011).  According to plaintiff Welch, "the SRF food stewards

─────────────────────

[1]This case is one of a few before this Court in which plaintiffs contest the adequacy of their diets during Ramadan.  *See, i.e., Welch v. Spaulding*, No. 2:12-cv-13172-PDB-PJK (E.D. Mich.); *Conway v. Purves*, No. 2:13-cv-10271-PJD-PJK (E.D. Mich.); and *Kyles v. Kusey*, No. 2:13-cv-10355-SJM-PJK (E.D. Mich.); *see also Heard v. Finco*, No. 2:13-cv-11342-VAR-MJH (E.D. Mich.) (transferred to W.D. Mich. on April 3, 2013 (Case No. 1:13-cv-00373)).

[2]*See* www.michigan.gov/corrections, "Offender Search."

[3]Each of the three (3) defendants is represented by Kevin R. Himebaugh of the Michigan Department of Attorney General - Corrections Division.  Doc. Entries 8, 9 & 10.

[4]Judge Borman has referred this case to me for pretrial matters.  Doc. Ent. 3.

provided [him] with approximately 1300 calories per day during the month of Ramadan while the rest of the general population was allowed approximately 2600 calories per day." Doc. Ent. 1 at 4 ¶ 1. Plaintiff claims he recognized this disparity by "add[in]g up the caloric intake from the [R]amadan menu . . . and the facilities regular menu[.]" Doc. Ent. 1 at 4 ¶ 2.

In his complaint, plaintiff claims that Spaulding "was contacted several times regarding the low amount of calories that were being provided during the month of [R]amadan . . . to let him know that the [R]amadan daily meals were inadequate." Doc. Ent. 1 at 4 ¶ 3. For example, Welch wrote to a Food Service Supervisor asking "what is the recommended nutritional calorie daily intake and by me fasting what is the nutritional calorie intake that you . . . are giving me in my Ramadan bag[?]" On August 9, 2011, Spaulding responded, "[t]he regular menu calls for 2600[.] I am not sure about the Ramadan menu, you will have to p[u]rsue this with Lansing." Doc. Ent. 1 at 27.

On or about August 13, 2011, Nathaniel Johnson (#516437) wrote to Food Service Director Spaulding, stating that the Ramadan meals are inadequate and that "[i]f [he is] not allowed to receive additional food or permitted to have the noon meal available [he] will have to second guess [his] participation in Ramadan due to the insufficient amount of food being handed out." Doc. Ent. 1 at 24-25.

On August 15, 2011, Spaulding responded that "[t]he regular main line is 2600 []calories," but he did not know how many calories were in the Ramadan Bagged Meals. Doc. Ent. 1 at 29; *see also* Doc. Ent. 1 at 26, Doc. Ent. 1 at 4 ¶ 4.

Plaintiff claims that "[e]ven with the daily meals being [approximately] cut in half during the holy month of [R]amadan, the plaintiff continued to adhere to his religious beliefs."  Doc. Ent. 1 at 4 ¶ 5.

**3.**    On September 4, 2011, Welch completed a Step I grievance (SRF-2011-09-01250-09A), wherein he stated that "[d]oing [his] whole 30 days of Ramadan[,] [he] was denied [his] proper caloric intake to maintain a balance from missing [his] afternoon meal."  Doc. Ent. 1 at 31.  On September 19, 2011, G. Kusey responded that "Food Service is following the menu provided by the MDOC Central Office Food Service program manager.  This has been reviewed by the MDOC Certified Dietitians for nutrition."  Doc. Ent. 1 at 32; *see also* Doc. Ent. 1 at 4 ¶ 6.

On September 21, 2011, Charles Conway (#336827) wrote to Spaulding to request the name of the Central Office Food Service Program Manager regarding Ramadan.  It appears that the response was Brad Purves.  Doc. Ent. 1 at 34; *see also* Doc. Ent. 1 at 4 ¶ 7.

On September 30, 2011, Welch completed a Step II grievance appeal form.  Doc. Ent. 1 at 36.  SRF Warden Lloyd W. Rapelje's October 13, 2011 Step II response denies the Step II grievance appeal, noting: "Grievant claims he was denied proper caloric intake and nutrition during Ramadan.  He provides no information to corroborate h[is] claims."  Doc. Ent. 1 at 37; *see also* Doc. Ent. 1 at 4 ¶ 8.

Welch completed a Step III grievance appeal in which he stated the following:

I showed where I was denied my daily caloric intake the whole 30 days of Ramadan and when asked about why I wasn't receiving the proper caloric intake they put everything on Lansing.  So my information to corroborate my claim is the menu that was used to serve us our Ramadan meals for the whole month. Which you will see is a violation of my [First] & [Eighth] Amendment of our Constitution.

Doc. Ent. 1 at 39.[5]  The December 21, 2011 Step III grievance response upheld the Step II

decision.  Doc. Ent. 1 at 40; *see also* Doc. Ent. 1 at 4 ¶ 9.

On February 28, 2012, Ombudsman Keith Barber informed Welch that his complaint had

been received and was under review.  Doc. Ent. 1 at 42; *see also* Doc. Ent. 1 at 4 ¶ 10.[6]

**4.**     Plaintiff's claims are based upon Purves's alleged provision of a Ramadan menu "that

was [approximately] half the daily calories and nutrition of the regular menu provided to the rest

of the population at [SRF][,]" and his claims against Spaulding and Kusey are based upon their

alleged adherence to that menu.  Doc. Ent. 1 ¶¶ 11-12.[7]

**B.     There Is a Genuine Issue of Material Fact that Plaintiff's First Amendment Right to
        Free Exercise Was Substantially Infringed by Subjecting Him to a Ramadan Menu**

---

[5]Although plaintiff's July 19, 2012 original complaint alleges that there was a "deliberate denial of the required daily caloric and nutritional intake[,]" Doc. Ent. 1 at 6, this report and recommendation does not interpret this phrase as alleging an Eighth Amendment deliberate indifference claim.

[6]Similar attachments to plaintiff's January 28, 2013 motion to supplement (Doc. Ent. 15) provide further factual background.  For example, in a July 25, 2012 letter, Welch wrote to Brad Purves "to try and resolve the issue of the 2012 Ramadan menu."  Doc. Ent. 15 at 15.  On August 9, 2012, plaintiff completed a Step I grievance (SRF-2012-08-01318-09B) claiming that he only asks "to be fed the same amount of food (nutrition) had [he] not been adhering to [his] religious belief, because Ramadan does not limit the amount of calories/nutrition one can consume daily, but only prohibits eating during the daylight hours."  Doc. Ent. 15 at 17.  On August 23, 2012, G. Kusey responded, "[t]hose offenders choosing to participate in Ramadan are choosing to abstain from the regular Statewide menu and therefore, are not receiving the same nutritional content because of fasting."  Doc. Ent. 15 at 18.

On September 5, 2012, plaintiff completed a Step II grievance appeal.  Doc. Ent. 15 at 20. On September 25, 2012, SRF Warden Rapelje rejected the appeal for plaintiff's failure to include the Step I grievance.  Doc. Ent. 15 at 21.

Plaintiff completed a Step III grievance appeal stating: "This grievance is not resolved[.] I don't know what type of games these people[] are playing, but I sent in all the relevant documents that it takes to proceed with this matter and here go copy of them[.]  I am going to take this even fu[r]ther for try[ing] to interfere with my due process of the law."  Doc. Ent. 15 at 23.

[7]*See* Doc. Ent. 1 at 9-12 (Ramadan Bagged Meal Menus), Doc. Ent. 1 at 14-17 (Regular Menus) and Doc. Ent. 1 at 19-22 (Calorie Chart).

5

**that Was Approximately Half of the Daily Nutritional and Caloric Intake of the Regular Menu at SRF and Regarding the Reasonableness of Such Practice.**

1.      Inmates retain the First Amendment right to free exercise of religion.[8]  In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court of the United States stated:

> Prison walls do not form a barrier separating prison inmates from the protections of the Constitution. Hence, for example, prisoners retain the constitutional right to petition the government for the redress of grievances, *Johnson v. Avery*, 393 U.S. 483[] (1969); they are protected against invidious racial discrimination by the Equal Protection Clause of the Fourteenth Amendment, *Lee v. Washington*, 390 U.S. 333[] (1968); and they enjoy the protections of due process, *Wolff v. McDonnell*, 418 U.S. 539[] (1974); *Haines v. Kerner*, 404 U.S. 519[] (1972). Because prisoners retain these rights, "[w]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Procunier v. Martinez*, 416 U.S. [396, 405-406 (1974)].

*Turner v. Safley*, 482 U.S. 78, 84 (June 1, 1987).

Days after the *Turner* decision, the Supreme Court stated that "[i]inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (June 9, 1987) (internal citation omitted).  *See also Thornburgh v. Abbott*, 490 U.S. 401, 408, 414 (1989) ("there is no question that publishers who wish to communicate with those who, through

---

[8]This report and recommendation interprets plaintiff's July 19, 2012 original complaint, to the extent it attempts to set forth a constitutional claim, as based solely upon the First Amendment. Although plaintiff's "statement of claims" makes use of the phrase "due process violation," Doc. Ent. 1 at 6, the Supreme Court of the United States has instructed that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Nor does this report interpret plaintiff's June 11, 2013 statement - "defendants['] choice to not follow policy mandated guidelines (i.e. approx. 2600 calories per day) during the month of Ramadan, 'resulted' in an infringement and undue burden upon the plaintiff's constitutional right to freely exercise his religion[,]" Doc. Ent. 22 at 8 - as an independent due process claim.

subscription, willingly seek their point of view have a legitimate First Amendment interest in access to prisoners[,]" and "we must determine whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective.").

"When a prison regulation substantially infringes on an inmate's First Amendment religious practices, 'the regulation is valid if it is reasonably related to legitimate penological interests.'"  *Hayes v. Tennessee*, 424 Fed.Appx. 546, 549 (6th Cir. 2011) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  In judging the reasonableness of the prison's regulation, the Court should consider (1) whether there is a valid, rational connection between the challenged prison regulation and the legitimate governmental interest which purportedly justifies it; (2) whether alternative means of exercising the right exist that remain available to prisoners; (3) what impact with the accommodation of the asserted constitutional right have on guards and other prisoners and on the prison's allocation of resources; and (4) whether ready alternatives exist.  *Turner*, 482 U.S. at 89-90.

**2.**      **Defendants' arguments.**  In their September 24, 2012 motion for summary judgment (Doc. Ent. 11), the MDOC defendants argue that "Plaintiff's First Amendment rights were not violated when he was provided bagged Ramadan meals to accommodate his fast."  Doc. Ent. 11 at 3.

In support of their motion, defendants provide the affidavit of SRF Food Service Director Donald Spaulding who, among other things, attests that "[a]lthough the caloric count was not provided with these menus, [he] never had any reason to believe that inadequate calories were being provided in the Ramadan Bagged Meal[,]" and that "[d]ue to the stringent time frames

provided for Ramadan, it was prudent for the facility to follow the bagged meal direction." Doc. Ent. 11-2 ¶ 3. According to Spaulding, "[a]ll institution menus are reviewed and certified by a registered dietician employed by the [MDOC]." Doc. Ent. 11-2 ¶ 4.

Defendants also provide the affidavit of CFA Food Service Program Manager Brad Purves, who attests: "Those offenders choosing to participate in Ramadan are choosing to abstain from the regular State–wide menu and therefore, are not receiving the same nutritional content because of fasting." Purves further attests that "[t]he Ramadan menu meets the minimum nutritional standards as PD 04.07.100 requires." Doc. Ent. 11-3 ¶ 9.

Furthermore, defendants submit the affidavit of SRF Acting Food Service Supervisor Glenn Kusey, who attests he "respond[ed] to grievance SRF-2011-09-01250-09a[.]" Doc. Ent. 11-4 ¶ 3. Attached to Kusey's affidavit are MDOC Menus for the Ramadan Bagged Meal provided by the Food Service Program. Doc. Ent. 11-4 at 16-19.[9]

Also, in support of their statements that "[t]he Ramadan Bagged Meal was not the only food available to Plaintiff[,]" and "[t]here is a Prisoner Store, which offers many food items[,]"[10] defendants offer the affidavit of MDOC Litigation Specialist Robert Farr including a spreadsheet

---

[9]The MDOC menus provided are for the Ramadan Bagged Meal for the weeks of July 31, August 7, August 14 and August 21. Doc. Ent. 11-4; *see also* Doc. Ent. 1 at 9-12.

[10]Attached to the defendants' motion for summary judgment is a copy of MDOC PD 04.02.130 ("Prisoner Store"), effective July 16, 2012, the policy statement for which notes, "[p]risoners in Correctional Facilities Administration (CFA) institutions may purchase approved items for their personal use from a prisoner store as set forth in this policy, except if in the Special Alternative Incarceration Program." *See* Doc. Ent. 11-5.

attachment listing plaintiff's MDOC Store purchases during July / August 2012.  Doc. Ent. 11-6 ¶ 3; Doc. Ent. 11-6 at 3.[11]

In support of their argument that plaintiff has failed to establish a constitutional violation, defendants cite some unpublished Sixth Circuit cases.  *See Alderson v. Pitcher*, No. 94-1254, 1994 WL 529852, 1 (6th Cir. Sept. 28, 1994) (affirming the district court's dismissal of Alderson's complaint where "Alderson sued two Michigan correctional personnel in their individual capacities for serving him and other Muslim inmates peanut butter and jelly sandwiches, fruit and milk at night during the month-long Muslim holiday of Ramadan, rather than letting Muslin inmates have the same type of food that was served to non-Muslim inmates during the day."); *Mabon v. Campbell*, Nos. 98-5468, 98-5513, 2000 WL 145177, 3 (6th Cir. Feb. 1, 2000) (affirming the district court's dismissal, noting that "Plaintiffs' complaint of delay in breakfast while segregated during the period of Ramadan does not rise to a constitutional violation. It may, however, constitute a negligence claim."); *Jaami v. Compton*, No. 98-5055, 1999 WL 455374, 1 (6th Cir. June 23, 1999) (affirming the district court's dismissal as frivolous of Jaami's claim that "the defendants served the plaintiffs cold breakfast during the Muslim holiday of Ramadan[.]").  Doc. Ent. 11 at 8-9.

Defendants claim they "have made reasonable accommodations by providing a bagged meal to be eaten before and after daylight hours. While Plaintiff may have preferred larger meals, there is no evidence that Defendants' actions actually interfered with Plaintiff's ability to exercise his religion."  Doc. Ent. 11 at 9.  Also, defendants claim:

---

[11]On July 19, 2012, plaintiff Welch purchased several items, including Starlite Mints Candy, Re-fried Beans, Chili Noodles, Columbian Blend Coffee, Sharp Cheese Spread, Cactus Annie's Corn Chips and Moon Lodge Rippled Chips.  Doc. Ent. 11-6.

Having a reduction in calories should be expected. After all, that is what a fast entails. But the amount of calories provided to plaintiff was not so deficient as to interfere with his right to practice his religion, or so deficient as to violate the minimal necessities required under the Eighth Amendment.

Doc. Ent. 11 at 10.

**3.     Plaintiff's Response.** Pursuant to my October 1, 2012 order (Doc. Ent. 12), plaintiff's response was due on or before November 1, 2012. On October 31, 2012, plaintiff filed a response. Doc. Ent. 14. Therein, plaintiff argues that (I) "[d]efendants['] violation of plaintiff's clearly established constitutional right does not shield them under qualified immunity[;]" (II) "[t]he Sixth Circuit recognizes that 42 U.S.C[.] [§] 1997e(e) does not bar mental or emotional damages for First Amendment violations[,]" and "[p]laintiff is entitled to monetary damages[;]"[12] (III) "[p]laintiff establishes that his constitutional right to freely exercise his religion[] and to adequate nutrition during Ramadan [were violated][;]" and (IV) "[u]nder the *Turner* factors, the defendant[s'] failure to provide plaintiff with adequate nutrition and calories during Ramadan was not related to legitimate penological interests and was therefore an undue burden on plaintiff's constitutional right to freely exercise his religion." Doc. Ent. 14 at 4, 5-14.

Within his argument that he has established a First Amendment violation, plaintiff explains that he "was fed inadequate nutritional and caloric bag[ged] meals for the entire month[,]" adding that Spaulding and Purves "provided special accommodations for plaintiff to

---

[12]Here, plaintiff maintains that monetary damages for violations of First Amendment rights are permitted. Doc. Ent. 14 at 7. In so doing, cites *Siggers-El v. Barlow*, 433 F.Supp.2d 811 (E.D. Mich. 2006) (Tarnow, J.), wherein this Court observed: "§ 1997e(e) is unconstitutional to the extent that it precludes First Amendment claims such as the one presented in this case. The Court holds that the jury was entitled to find that Plaintiff suffered mental or emotional damages as a result of Defendant's violation of his First Amendment rights. Any other interpretation of § 1997e(e) would be inconsistent with the law and also unconstitutional." *Siggers-El*, 433 F.Supp.2d at 816 -817.

10

observe his religious tenets, by insuring that a bag meal was provided before dawn and after sunset in 2011 Ramadan." Doc. Ent. 14 at 8.

Also, plaintiff contends that "[d]efendants and the MDOC clearly understand that the daily recommended caloric intake for inmates is 2900 calories per day." Doc. Ent. 14 at 8-9. Here, plaintiff cites Judge Maloney's opinion in *Heard v. Caruso, et al.*, No. 2:05-cv-231, 2012 WL 951698 (W.D. Mich. Mar. 20, 2012), wherein Heard had alleged that the denial of a Nation of Islam (NOI) diet "placed a substantial burden on his ability to freely exercise his religious beliefs[,]" and Heard had claimed "that defendants' actions violated his equal protection rights given the accommodation of religious diets for Jewish and Buddhist prisoners, as well as his rights under the RLUIPA." *Heard*, 2012 WL 951698, *1.

Within the Court's findings of fact, the Court noted that McClellan, a prison nutrition and food service expert, "conceded during her trial testimony that if the dietary restrictions of the NOI regime were broken up into three meals, the nutritional standards of 2900 calories could be achieved. " Ultimately, Judge Maloney accepted the opinion of McClellan: "[h]er recommendation after review of Mr. Heard's NOI diet request was to deny based upon her professional opinion that consumption of 2900 calories at one meal was violative of nutritional norms and therefore in violation of MDOC policy to provide adequate sustenance for prisoners." *Heard*, 2012 WL 951698, *3.

Moving to conclusions of law, Judge Maloney said the following with respect to the first *Turner* factor:

> Ms. McClellan testified without effective contradiction that the NOI diet utilizing one meal per day did not meet nationally recognized nutritional standards which by policy were required by the MDOC. It is beyond peradventure that prison authorities are duty bound to provide meals that meet appropriate nutritional

standards for those incarcerated. Such standards contribute to the health and well-being of all prisoners. Failure to do so would more than likely constitute a violation of the Eighth Amendment. *See Youngblood v. Romeo*, 457 U.S. 307, 315–16[] (1987). Clearly, there is a rational connection between the prison regulation and the legitimate governmental interest put forward by the MDOC to justify its denial of a NOI diet.

*Heard*, 2012 WL 951698, *5.[13]

Plaintiff claims that he informed a defendant "of the inadequate nutritional caloric intake of the Ramadan bagged meals[,]" and that defendant's response was, "as a result of plaintiff's fasting that plaintiff forfeited his lunch meal which entails the reduction in calories." According to plaintiff, he "is instructed that he can eat and drink as much as he want[s] until dawn." Plaintiff also notes that, during a Step I grievance interview with Kusey, plaintiff requested as a resolution that "Food [S]ervice could just double the Ramadan bags to satisfy plaintiff['s] nutritional needs[,]" but Kusey responded, "he was just following the direction issued by Lansing." Doc. Ent. 14 at 10. Furthermore, plaintiff contends that "[n]o information or department menu was ever posted regarding the fact that inmates['] daily caloric intake and nutrition would be so greatly reduced[,]" therefore, he "had no reason to believe that he would have received less calories[.]" Doc. Ent. 14 at 12.

**4.** **Plaintiff's supplemental response.** My May 13, 2013 order (Doc. Ent. 17) provided that plaintiff would have up to and including Monday, June 10, 2013 by which to file a supplemental response to defendants' September 24, 2012 dispositive motion (Doc. Ent. 11). On June 10, 2013, plaintiff filed a motion for an extension of time to respond (Doc. Ent. 20).

---

[13]However, after balancing the final three *Turner* factors, Judge Maloney concluded that "the greater weight falls in favor of defendants[,]" and entered a judgment of no cause of action in favor of the remaining defendants on plaintiff's equal protection claim. *Id.* at *6.

On June 11, 2013, plaintiff filed a supplemental response.  Doc. Ent. 22.  To begin, it is plaintiff's position that "[t]he record supports the fact that the defendants did not provide [him] with policy mandated ad[e]quate daily caloric intake during the month of Ramadan 2011 and 2012[,]" and that this failure "placed an undue burden and infringement on plaintiff's constitutional right to freely exercise his religious belief[.]" Doc. Ent. 22 at 3.[14]

**5.     Here, the Court should conclude there is a genuine issue of material fact that plaintiff's First Amendment right to free exercise was substantially infringed by subjecting him to a Ramadan menu that was approximately half of the daily nutritional and caloric intake of the regular menu at the SRF.**

In defense of their claims, the parties rely on two MDOC Policy Directives.  MDOC PD 04.07.100 ("Offender Meals"), effective December 28, 2009, provides that "[o]ffenders shall be permitted to abstain from any foods that violate their religious tenets.  Religious menus shall be developed and religious meals provided as set forth in PD 05.03.150 'Religious Beliefs and Practices of Prisoners'." *Id*. ¶ D.  Furthermore, this policy provides: "All menus and all meals as actually served at a correctional facility shall satisfy the nutritional and caloric recommendations set forth in the dietary reference intakes approved by the National Research Council.  The current edition of 'The Dietary Guidelines for Americans' by the United States Department of Health and Human Services and Department of Agriculture shall be followed for menu

---

[14]On June 12, 2013, I entered an order (Doc. Ent. 21) granting plaintiff's motion for an extension of time to respond (Doc. Ent. 20) and setting the response deadline for July 8, 2013.

planning." *Id.* ¶ G.[15]  Additionally, with respect to a regular diet menu, the policy directive

provides:

> The institutional Food Service Director, SAI Food Service Supervisor, Tuscola
> RRTP Supervisor, or designee may elect to increase the serving size of a food
> item identified on the regular diet menu or include additional food items.
> However, as stated in Paragraph G, meals as actually served must satisfy the
> nutritional and caloric recommendations set forth in the dietary reference intakes,
> including those regarding fat and cholesterol content.

MDOC PD 04.07.100 ¶ J.

Likewise, with respect to religious menus/meals, MDOC PD 05.03.150 ("Religious

Beliefs and Practices of Prisoners"), effective September 20, 2007, provides: "The CFA or FOA

Deputy Director or designee may authorize the development of a separate menu to meet the

necessary religious dietary restrictions of a prisoner. Such menus shall meet the minimum

nutritional standards set forth in PD 04.07.100 'Offender Meals'. The appropriate Deputy

Director or designee shall have final approval of such menus and shall determine at which

facilities the meals will be offered. Kosher meals shall be provided in CFA institutions as set

forth in OP 05.03.150-A 'Kosher Meal Program'." *Id.* ¶ QQ.

Each of plaintiff's responses provides evidence in favor of his complaint that his First

Amendment right to free exercise was substantially infringed by subjecting him to a Ramadan

menu that was approximately half of "the daily nutritional and caloric intake of the regular menu

at the [SRF]." Doc. Ent. 1 at 5 ¶¶ 11-12, 6.  For example, attached to plaintiff's October 31,

2012 response are two letters.  In a February 3, 2012 letter from Gwen Imes, a Manager at the

---

[15]Attached to plaintiff's October 31, 2012 response is a table titled, "Estimated Calorie Needs per Day by Age, Gender, and Physical Activity Level[,]" from Chapter Two of the *Dietary Guidelines for Americans, 2010.*  Doc. Ent. 14 at 17-18.

Michigan Department of Community Health, she stated, "[a]ccording to the *2010 Dietary Guidelines for Americans*, calorie requirements range from . . . 2,000 to 3,000 calories per day for adult men, depending on age and physical activity level." Doc. Ent. 14 at 23-24.  In a March 13, 2012 letter from Amy Frady, a USDA Nutritionist, she informs that "[o]n average, a male between ages 19-50 should consume between 2,400 to 2,800 calories per day, depending on physical activity level." Doc. Ent. 14 at 21-22.[16]

In his October 25, 2012 affidavit, plaintiff attests that, "[t]hroughout the month of Ramadan, I was only fed [approximately] 1300 calories per day[,]" and "[o]n some days during the month of Ramadan I was fed below 1200 calories per day." Doc. Ent. 14 at 39-41 ¶¶ 8-9.[17] Furthermore, plaintiff attests that Spaulding "was notified several times regarding the Ramadan meals not being of adequate calories." Doc. Ent. 14 at 39-41 ¶ 10.  Additionally, plaintiff represents that "[t]he quality of my spiritual experience was diminished by the lack of daily calories I was provided during the Holy month of Ramadan." Doc. Ent. 14 at 39-41 ¶ 11.

In his verified supplemental June 11, 2013 response, plaintiff states, "Ramadan is one of the Five Pillars of Islam and during Ramadan [M]uslims are to refrain from eating during daylight hours, but are not limited to daily caloric or nutritional intake." Doc. Ent. 22 at 5, 10.

---

[16]Attached to plaintiff's October 31, 2012 filing is the October 8, 2012 affidavit of Charles Conway (#336827) (Doc. Ent. 14 at 19-20), who is currently incarcerated at Saginaw Correctional Facility (SRF) and is a party to Case No. 2:13-cv-10271-PJD-PJK (E.D. Mich.).  It appears that the Frady and Imes letters are responses to letters prepared by Conway.

[17]Furthermore, apparently comparing defendants' citation that someone observing Ramadan should not allow his or her daily caloric intake to fall below 1,200 calories (*see* Doc. Ent. 11 at 4) with plaintiff's attestation that on some days during Ramadan he was fed less than 1,200 calories (Doc. Ent. 14 at 39-41 ¶ 9), plaintiff contends that "the defendants agree to having infringed upon [his] rights at the very least during the days that he was fed below [that] amount[.]" Doc. Ent. 14 at 13.

In his June 10, 2013 affidavit of fact, plaintiff attests that "during the month of Ramadan, I am only prohibited from eating during the daylight hours, and outside of the daylight hours, CHAPTER 2 VERSE 187 of the HOLY QUR'AN does not limit the amount of food that I can eat."  Doc. Ent. 22 at 12 ¶ 3.  Furthermore, plaintiff attests that "receiving approx. 1200 calories per day during Ramadan (sometimes less) created a condition which pressured me to break the fast and diminished the spiritual quality I would have otherwise received."  Doc. Ent. 22 at 12 ¶ 4.

Perhaps referring to Gwen Imes's letter, plaintiff claims that "the defendants recognize that the daily caloric standard is [approximately] 2600 calories per day[,]" yet, they "chose to provide [him] [approximately] half of what was mandated."  According to plaintiff, "[t]his great reduction in calories during the month of Ramadan served no pen[o]logical interest and created an undue burden that infringed upon [his] Constitutional Right to freely exercise his Religion."  Doc. Ent. 22 at 6.

Then, plaintiff points out, "'prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions.'"  *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) (quoting *Alexander v. Carrick*, 31 Fed.Appx. 176, 179 (6th Cir.2002)).  *See also Makin v. Colorado Dept. Of Corrections*, 183 F.3d 1205, 1211-1214 (10th Cir. 1999) ("the burden defendants placed on Mr. Makin diminished the spiritual experience he otherwise could gain through Ramadan[,]" and "the directive [that inmates in segregation would be unable to participate in special feeding activities] infringed on Mr. Makin's right to exercise his religion and that defendants did not put forth any legitimate penological interests to justify that infringement."); *see also Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) ("It is

16

well-established that inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'") (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980)).

Plaintiff responds that "[t]he record supports the fact that the defendants did not provide the plaintiff with policy mandated adequate daily caloric intake during the month of Ramadan 2011 and 2012." He claims that "[t]he failure to provide adequate daily caloric intake during Ramadan 2011 and 2012 place[s] an undue burden and infringement on [his] Constitutional Right to Freely exercise his Religious belief." In other words, "defendants placed an undue burden and greatly infringed on his Constitutional Right to freely exercise his Religious belief (i.e[.] the practice of Ramadan)." Doc. Ent. 22 at 6. It is plaintiff's position that "the defendants['] failure to provide him adequate policy mandated daily caloric intake during his religious month of Ramadan[] resulted in an undue burden on plaintiff's Constitutional rights to freely exercise his religion." Doc. Ent. 22 at 6-7.

Furthermore, there are several district court cases which have considered the adequacy of inmates' food during Ramadan. *See, i.e., Smith v. Washington Dept. of Corrections*, No. C11-5731, 2013 WL 1499084, 6 (W.D. Wash. Mar. 6, 2013) ("The Court concludes that defendants are entitled to dismissal of plaintiff's First Amendment claim. Defendants provided nutritionally adequate food to inmates during Ramadan of 2010, with the possible exception of the first day, when the Department was addressing its error in providing boxed meals without sufficient nutrition. The Court recommends granting defendants' motion for summary judgment.") (report and recommendation of Creatura, M.J.); *Hall v. Jabe*, No. 7:11-cv-00377, 2012 WL 2789734, 1-2 (W.D. Va. July 9, 2012) (plaintiff had contended that Ramadan crab cake trays had more food,

17

and in support of the conclusion that plaintiff had not described a deprivation of a religious right,

the Court noted:  "Plaintiff's receipt of a crab cake tray with fewer calories than the Ramadan

crab cake tray does not describe an unconstitutional condition of confinement."); *Hall v. Sutton*,

No. 11–cv–446–JPG, 2012 WL 407244, *1, *4 (S.D. Ill. Feb. 8, 2012) (Where a plaintiff had

alleged that "[the] two meals combined consisted of approximately 1000 calories, instead of the

2800 calories general population prisoners are provided according to Illinois Department of

Corrections ("IDOC") policy[,]" the Court stated "[it could not] determine from the pleadings

whether a legitimate penological interest existed to deny Plaintiff a third meal or otherwise

provide him with the full 2800 calories[,]" and "it is possible that the denial of almost two thirds

of Plaintiff's normal daily calories during Ramadan 2010 placed a substantial burden on his

ability to exercise his religion in violation of the RLUIPA's prohibition against imposing a

substantial burden on his religious exercise.  Plaintiff alleges that his spiritual experience was

greatly diminished because he was hungry and experiencing physical discomfort."); *Jernigan v.*

*Atkins*, No. 5:11–CV–113–RH–GRJ, 2011 WL 3421506, 2 (N.D.Fla. June 30, 2011) (report and

recommendation of Jones, M.J.) ("Under both the Free Exercise Clause of the First Amendment

and RLUIPA, a prisoner has a 'clearly established ... right to a diet consistent with his ...

religious scruples,' including proper food during Ramadan.  Plaintiff's allegation that he was

forced to choose between receiving adequate daily calories and observing Ramadan is sufficient

to state a claim under the *Twombly* standard against Assistant Warden Atkins and Food Service

Director Olsen, the Apalachee officials who knew of Plaintiff's complaints and arguably were in

a position to remedy them.") (internal citations omitted); *Kwanzaa v. Mee*, No. 09-5132 (SRC),

2011 WL 2580396, *9-*10 (D.N.J. June 28, 2011) ("Kwanzaa alleges that, during Ramadan, he

18

did not receive the same 2200 calorie diet that non-Muslims received, which resulted in weight loss[,]" and "states that his special meals were issued early so they became cold and/or spoiled by the time it was to be eaten[,]" "Kwanzaa's allegations fail to rise to the level of either a First Amendment religious violation or a violation of the RLUIPA. He does not allege that he was denied a nutritionally adequate diet or that the diet provided prevented him from adhering to religious dietary law. Kwanzaa merely states that several meals were delivered too early and that his three meals were short of 2200 calories per day."); *Jones v. Correctional Care Solutions*, No. C.A. No. 0:09–269–HMH–PJG, 2010 WL 2926178, 1 (D.S.C. July 23, 2010) (with regard to plaintiff's claim that he had been denied his First Amendment right to exercise his religion, "Jones was able to participate in Ramadan fasting and accommodations were made to allow additional snacks in the evening to ensure that Jones received sufficient calories during Ramadan."); *Green v. Tudor*, 685 F.Supp.2d 678, 684, 695-698 (W.D. Mich. 2010) (opinion and order of Neff, J., approving and adopting report and recommendation of Scoville, M.J.) (where "[p]laintiff's claims against Assistant Food Service Director Almy relate to the adequacy of the prison's food service during plaintiff's 2007 observance of Ramadan[,]" finding Almy "entitled to judgment in his favor as a matter of law on plaintiff's Free Exercise claims[,]" where plaintiff had alleged that "defendant Almy's actions violated his rights under the Free Exercise Clause 'as a result of having to engage in complaining to prison officials regarding the denial of fair notice, hot meals, and inadequate nutritional calories, as set forth in the complaint.'"); *Vega v. Lantz*, No. No. 304CV1215DFM, 2009 WL 3157586, *5-*7, *12 (D. Conn. Sept. 25, 2009) (Martinez, M.J.) (where plaintiff alleged that "the lack of Halal meat [wa]s violative of the First Amendment, RLUIPA, and the Equal Protection Clause[,]" the Court granted summary judgment

19

as to plaintiff's free exercise claim regarding Halal meat and as to plaintiff's unexhausted claim regarding "lack of adequate nutrition in the Ramadan meals[.]"); *Lovelace v. Bassett*, No. 7:07CV00506, 2008 WL 4452638, 3 (W.D. Va. Sept. 27, 2008) ("Lovelace alleges suffering adverse effects to his personal well being and to his religious experience resulting from the month-long period of caloric deprivation under the two-meal program. He also demonstrates that reduced caloric intake and resultant hunger are not required elements of the Ramadan fasting practice, which does not restrict the amount of food adherents may consume between sunset and sunrise. Liberally construing his pro se submissions, I find the adverse effects Lovelace allegedly suffered from this program to be sufficient to state a claim that the two-meal Ramadan program imposed a 'substantial burden' on his religious exercise under both the First Amendment and RLUIPA standards."); and *Couch v. Jabe*, 479 F.Supp.2d 569, 588-589 (W.D. Va. 2006) (memorandum opinion of Sargent, M.J.) (where plaintiff alleged that "the meals served by the defendants to him as well as to the other World Community fast participants during Ramadan 2004, were inadequate in nutritious value and caloric content, in violation of his right to freely express his religious beliefs under both the First Amendment and RLUIPA[,]" "a genuine issue of material fact exists as to whether the defendants provided Couch with adequate nutrition and calories in violation of Couch's constitutional and statutory rights to freely exercise his religion. Thus, I find that, viewing the facts in the light most favorable to Couch, a reasonable jury could find that inmates participating in the fast, receiving only 1000 daily calories, were substantially

pressured to break the fast, in violation of Islamic tenets, in order to satisfy their physical

hunger.") (internal footnote omitted).[18]

       Considering plaintiff's submissions, as well as relying upon the Sixth Circuit's decision

in *Colvin,* the Tenth Circuit's decision in *Makin* and the district court decisions in *Hall v. Sutton,*

*Jernigan*, *Lovelace*[19] and *Couch*, there is a genuine issue of material fact that plaintiff's First

Amendment right to free exercise was substantially infringed by subjecting him to a Ramadan

menu that was approximately half of "the daily nutritional and caloric intake of the regular menu

at the [SRF]."  Doc. Ent. 1 at 5 ¶¶ 11-12, 6.

**6.**    **Furthermore, there is a genuine issue of material fact as to the reasonableness of a**

**practice which results in a prisoner who is observing Ramadan receiving approximately**

**one half of the caloric intake of a prisoner who is not observing Ramadan.**  I conclude that

---

    [18]*Johnson v. Bailey*, No. 10–CV–0135–SCW, 2013 WL 1308720, *4, *8 (S.D. Ill. Mar. 30, 2013) (findings of fact and conclusions of law of Williams, M.J.) (finding that "Larry Johnson is a Buddhist whose sincerely held beliefs require that he not eat meat[,]"and "Johnson began eating from the Lacto–Ovo Vegetarian (LVO) diet in 2004[,]" and concluding regarding plaintiff's RLUIPA claims that " there is no ongoing burden to Johnson's religious exercise. He is getting ample time to eat his religious diet, he gets adequate calories from it, and there is a no-soy therapeutic diet easily available to him in case he cannot stomach the LVO diet containing TVP [Textured Vegetable Protein]. No aspect of the IDOC's LVO diet, nor any part of the current food line policy, renders Plaintiff's religious exercise 'effectively impracticable,' as is required to show a substantial burden.") (citation omitted).

    [19]In "deny[ing] the Motion to Dismiss as to Lovelace's claims under the First Amendment and RLUIPA[,]" the Court stated:  "Lovelace alleges suffering adverse effects to his personal well being and to his religious experience resulting from the month-long period of caloric deprivation under the two-meal program. He also demonstrates that reduced caloric intake and resultant hunger are not required elements of the Ramadan fasting practice, which does not restrict the amount of food adherents may consume between sunset and sunrise. Liberally construing his pro se submissions, I find the adverse effects Lovelace allegedly suffered from this program to be sufficient to state a claim that the two-meal Ramadan program imposed a 'substantial burden' on his religious exercise under both the First Amendment and RLUIPA standards."  *Lovelace*, 2008 WL 4452638 at *3.

there is a genuine issue of material fact regarding whether there is a "'valid, rational connection'

between the prison regulation and the legitimate governmental interest put forward to justify it."

*Turner*, 482 U.S. at 89.  Even though Purves has attested that the Ramadan menu complies with

MDOC PD 04.07.100's minimum nutritional standards (Doc. Ent. 11-3 ¶ 9), plaintiff has attested

that "[t]hroughout the month of Ramadan, I was only fed [approximately] 1300 calories per

day[,]" and "[o]n some days during the month of Ramadan[,] I was fed below 1200 calories per

day[,]" Doc. Ent. 14 at 39-41 ¶¶ 8-9. Then, while Spaulding attests that "[d]ue to the stringent

time frames provided for Ramadan, it was prudent for the facility to follow the bagged meal

direction[,]" Doc. Ent. 11-2 ¶ 3, the legitimate governmental interest for serving one-half of the

normal calories is not clear.  This is so, even if, as defendants note, plaintiff has the alternative of

supplementing his Ramadan Bagged Meal by purchasing food items from the prisoner store.

Doc. Ent. 11 at 6.

**C.    To the Extent Plaintiff Alleges a Claim under RLUIPA, There Is a Genuine Issue of Material Fact that Subjecting Plaintiff to a Ramadan Menu that Was Approximately Half of the Daily Nutritional and Caloric Intake of the Regular Menu at SRF Substantially Burdened his Religious Exercise.**

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) is codified

at 42 U.S.C. §§ 2000cc - 2000cc-5.  In pertinent part, it provides:

> No government shall impose a **substantial burden** on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc-1(a) (emphasis added).  "[A] 'substantial burden' must place more than an inconvenience on religious exercise; a 'substantial burden' is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004).

Although plaintiff's complaint does not expressly list RLUIPA as a basis for his claims against defendants, he does state that "[t]he deliberate denial of the required daily caloric and nutritional intake during the recognized religious month of [R]amadan . . . [was a] substantial burden on the free exercise of the plaintiff's religion (for a period of 30 days)[.]" Doc. Ent. 1 at 6.  Therefore, this report recognizes the possibility that plaintiff intended to allege a violation of RLUIPA.  *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972) ("the allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[.]").

"In establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged practice substantially burdens that exercise of religion." *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008) (citing 42 U.S.C. § 2000cc-2(b)).  "Once the plaintiff establishes this prima facie case, the defendants 'bear the burden of persuasion on any [other] element of the claim,' [42 U.S.C. § 2000cc-2(b)], namely whether their practice 'is the least restrictive means of furthering a compelling governmental interest.'" *Koger*, 523 F.3d at 796 (quoting *Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir.2006)).

To the extent the Court interprets plaintiff's complaint as alleging a violation of 42 U.S.C. § 2000cc-1(a) of RLUIPA, it should conclude, for the reasons set forth above, that there is a genuine issue of material fact that subjecting him to a Ramadan menu that was

23

approximately half of the daily nutritional and caloric intake of the regular menu at SRF substantially burdened his religious exercise.  *See Living Water Church of God v. Charter Tp. of Meridian*, 258 Fed.Appx. 729, 741 n.6 (6th Cir. 2007) ("We are reluctant to interpret the 'substantial burden' of this provision of RLUIPA as including lesser burdens than those encompassed by the Supreme Court's 'Free Exercise' jurisprudence[.]").  Nor has the government shown that the imposition of this burden furthers a compelling governmental interest and is the least restrictive means of doing so.

**D.     Defendant Kusey Is Entitled to Summary Judgment as to Plaintiff's Claims against Him, Because His Only Role in this Case Involved His Denial of Plaintiff's Step I Grievances or an Alleged Failure to Act.**

Glenn Kusey is an MDOC Acting Food Service Supervisor at SRF.  Doc. Ent. 11-4 ¶ 1.  Within the twelve (12) paragraphs of plaintiff's Welch's original complaint, he notes defendant Kusey's September 19, 2011 Step I grievance response (Doc. Ent. 1 at 32) and contends that Kusey "adher[ed] to a menu that was half the daily nutritional and caloric intake of the regular menu at [SRF][.]"  Doc. Ent. 1 at 4-5 ¶¶ 6, 12.[20]

However, Kusey cannot be held liable under 42 U.S.C. § 1983 where his only role in this case involves the denial of an administrative grievance or the failure to act.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("Defendants . . . argue that they were not involved in Shehee's termination from his commissary job and that their only roles in this action involve the

---

[20]In his January 28, 2013 proposed supplemental complaint (Doc. Ent. 15 at 3-5) which concerns matters occurring since the July 19, 2012 filing of the original complaint, plaintiff claims he contacted Kusey by letter (¶ 4), claims that Kusey "did not respond in writing, but did call this plaintiff to his office to address the issue of insufficient daily calories during Ramadan 2012[,]" and "stated that he was just following the menu provided by Central Food Service Program Manager Brad Purves[,]" (¶ 7) and "adher[ed] to the Ramadan menu (in 2012) that was [approximately] half the daily calories mandated by MDOC [PDs] 04.07.100 and 05.03.150[,]" (¶ 14).

denial of administrative grievances or the failure to act; thus, they cannot be liable under § 1983. We agree."); s*ee also Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983.") (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)).

**E.    Defendants Purves and Spaulding are Entitled to Summary Judgment as to Plaintiff's Claims against Them in Their Personal Capacities for Damages, because they are entitled to qualified immunity.**

**1.**    As the United States Supreme Court has stated, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982).[21]

The Sixth Circuit has stated that the qualified immunity inquiry requires a three-step analysis: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (citing *Dickerson v. McClellan*, 101 F.3d 1151,

---

[21]Furthermore, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818-819.

1157-58 (6th Cir.1996)).[22]  *See also Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002).

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that

the officials are not entitled to qualified immunity."  *Silberstein v. City of Dayton*, 440 F.3d 306,

311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th

Cir.2004)).

Importantly, the defense of qualified  immunity is best addressed after determining

whether plaintiff has stated a constitutional claim upon which relief can be granted.  "[T]he

better approach to resolving cases in which the defense of qualified immunity is raised is to

determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.

Normally, it is only then that a court should ask whether the right allegedly implicated was

clearly established at the time of the events in question."  *County of Sacramento v. Lewis*, 523

U.S. 833, 842 n.5 (1998), citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

**2.**      In their September 24, 2012 motion, defendants assert that "[p]laintiff has failed to show

that Defendants violated clearly established statutory or constitutional rights."  Doc. Ent. 11 at 3.

---

[22]*See also Saucier v. Katz*, 533 U.S. 194 (2001), wherein the Supreme Court stated, "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.  *See also Drogosch v. Metcalf*, 557 F.3d 372, 377 (6th Cir. Feb. 25, 2009) (citing *Saucier*, 533 U.S. at 201).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.
    Also, the Supreme Court has stated, "[a]lthough we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that *it is often beneficial*."  *Pearson v. Callahan*, 129 S.Ct. 808, 818 (Jan. 21, 2009) (emphasis added).

Having concluded that there are genuine issues of material fact as to plaintiff's First Amendment

free exercise claim and possible RLUIPA claim, I consider whether the right allegedly violated

was clearly established such that a reasonable person would have known.  As the United States

Supreme Court has stated:

> To determine whether a right was clearly established for purposes of qualified immunity, this court "look[s] first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 579 (6th Cir.1997) (citation and quotation omitted). Although we have stated that "it is only in extraordinary circumstances that we can look beyond the Supreme Court and Sixth Circuit precedent to find 'clearly established law,' " *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir.1993), there need not be a relevant decision from the Supreme Court or this court in order to determine that a law is clearly established, *see*, *e.g.*, *Chappel*, 131 F.3d at 579; *McCloud v. Testa*, 97 F.3d 1536, 1556 (6th Cir.1996) (stating that the lack of Supreme Court or Sixth Circuit precedent "is not a sufficient condition for concluding that the law is unclear on the subject and so qualified immunity must be granted to the defendant"). We have held that "the decisions of other courts can also clearly establish the law[,] but they must 'point [unmistakably] to the unconstitutionality of the conduct and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional.' " *Summar*, 157 F.3d at 1058 (citation omitted). If reasonable officials could disagree on the issue, immunity should be recognized. *See id.* As this court has stated, "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 515 (6th Cir.) (citation and quotation omitted), cert. denied, 522 U.S. 1029, 118 S.Ct. 628, 139 L.Ed.2d 608 (1997). The burden of convincing a court that the law was clearly established "rests squarely with the plaintiff." *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir.1997) (citations omitted).

*Key v. Grayson*, 179 F.3d 996, 999-1000 (6th Cir. 1999); *see also Cope v. Heltsley*, 128 F.3d 452,

459 n.4 (6th Cir. 1997), *Cullinan v. Abramson*, 128 F.3d 301, 311 (6th Cir. 1997).[23]

---

[23]*See also Hope v. Pelzer*, 536 U.S. 730, 741-742 (2002) ("in light of binding Eleventh Circuit precedent, an Alabama Department of Corrections (ADOC) regulation, and a DOJ report

Plaintiff argues that defendants should not be entitled to qualified immunity, because they "are state employees who[se] actions resulted in the infringement and undue burden being placed upon the plaintiff's First Amendment constitutional right to freely exercise his religion." Doc. Ent. 22 at 3; *see also* Doc. Ent. 14 at 5-6.  Here, plaintiff cites *Colvin*, *Makin* and *Couch*, as well as *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987),[24] and asserts that "[c]ourts have held that inmates are entitled to adequate nutrition and calories[,]" and "inmates retain fundamental Constitutional rights such as the free exercise clause of the [F]irst Amendment."  Doc. Ent. 22 at 7.

Plaintiff maintains that defendants "were mandated by MDOC policy to provide adequate nutrition to the plaintiff during Ramadan."  Doc. Ent. 22 at 7.  Citing MDOC PD 04.07.100 ¶ G, plaintiff claims that "the Ramadan menu did not satisfy these daily caloric recommendations." Furthermore, plaintiff asserts, "defendants['] choice to not follow policy mandated guidelines (i.e. approx. 2600 calories per day) during the month of Ramadan, 'resulted' in an infringement and undue burden upon the plaintiff's constitutional right to freely exercise his religion."  Doc. Ent. 22 at 7-8.

Plaintiff claims that during Ramadan he "was allowed approx[imately] 1200 calories per day, about 1400 calories per day less than what was mandated by MDOC [PDs] 05.03.150 and 04.07.100."  Plaintiff maintains that "the defendants['] failure to provide adequate daily calories

---

informing the ADOC of the constitutional infirmity in its use of the hitching post, we readily conclude that the respondents' conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Harlow*, 457 U.S. at 818).

[24]"We hold that the prison regulations here challenged [which resulted in their inability to attend Jumu'ah] did not violate respondents' rights under the Free Exercise Clause of the First Amendment to the United States Constitution."  *O'Lone*, 482 U.S. at 345.

during the month of Ramadan, infringed upon and created an undue burden of his right to freely exercise his religion."  Doc. Ent. 22 at 8.

Citing the Axxya Systems Nutritionist Pro™ Menu Template Nutrition Summary (Doc. Ent. 22 at 13-14), plaintiff claims that "defendants were clearly aware of the fact that [he] was to be provided, on average, 1805 calories per day[.]" According to plaintiff, "defendants, during Ramadan 2009 and 2010, did in fact provide inmates adhering to Ramadan with approx[mately] twice as [many] calories (FOOD) that [he] was provided with during Ramadan 2011 and 2012." Doc. Ent. 22 at 8.[25]  Plaintiff contends that "[a] comparison of the Ramadan 2009 and 2010 menu . . . [with] the 2011 and 2012 Ramadan menu that was served to the plaintiff, clearly shows that the defendants not only cut the plaintiff's daily caloric intake in half during Ramadan 2011 and 2012, but it also shows that the defendants were fully aware of the fact that the plaintiff's calories were reduced by half."  Doc. Ent. 22 at 8-9.

In the end, it is plaintiff's position that "[a] reasonable person in the defendants['] position would have known that such a reduction in daily calories during Ramadan would have created an undue burden and infringement upon the plaintiff's right to freely exercise his religion."  Doc. Ent. 22 at 9.

**3.**     However, I agree with defendants that "the law was not clearly established that a prisoner fasting for Ramadan was entitled to the exact number of calories as the general population." Doc. Ent. 11 at 11.  "The official will be immune 'if officers of reasonable competence could disagree' on whether the conduct violated the plaintiff's rights."  *Caldwell v. Moore*, 968 F.2d

---

[25]Attached to plaintiff's supplemental response are MDOC SRF Ramadan menus for 2010 and 2009 (Doc. Ent. 22 at 15-25).

595, 599 (6th Cir. 1992) (quoting *Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir.1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).  "The particular circumstances of the given case need not have been previously held illegal for the right to be 'clearly established,' but the right must be defined in a manner that puts a reasonable official on notice that his actions are illegal or unconstitutional."  *Caldwell*, 968 F.2d at 599.

While the First Amendment United States Supreme Court cases cited by the parties - *Turner*, *O'Lone* and *Thornburgh* - stand for the principle that prisoners retain certain First Amendment rights - such as the right to petition the government for redress of grievances and the right to free exercise of religion - and provide the standard by which restrictions or limitation of such rights are reviewed, these cases do not make clear that a prisoner fasting for Ramadan was entitled to the exact number of calories as the general population.  Furthermore, the unpublished Sixth Circuit decisions in *Alderson*, *Mabon* and *Jaami* do not examine the caloric adequacy of a fasting religious diet.  Also, the Sixth Circuit's published decision in *Colvin,* while observing an unpublished Sixth Circuit ruling that "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions[,]" and "[i]f the prisoner's diet ... is sufficient to sustain the prisoner in good health, no constitutional right has been violated[,]" based its decision on the reasonableness of Chaplain Riley's actions.  *See Colvin*, 605 F.3d at

290-291.  Finally, of the nine (9) aforementioned district court decisions, only *Green*[26] is from a

district court within the Sixth Circuit.

4.      The parties also present arguments about the reasonableness of defendants' actions.  On

one hand, defendants cite defendant Spaulding's affidavit (Doc. Ent. 11-2 ¶ 3) and allege that

"[a]lthough the caloric count was not provided with these menus, Defendant Spaulding never

had any reason to believe that inadequate calories were being provided in the Ramadan Bagged

Meal[,]" and that "[d]ue to the stringent time frames provided for Ramadan, it was prudent for

the facility to follow the bagged meal direction."  Doc. Ent. 11 at 4-5.  As noted above, they

state, "[d]efendants have made reasonable accommodations by providing a bagged meal to be

eaten before and after daylight hours.  While Plaintiff may have preferred larger meals, there is

no evidence that Defendants' actions actually interfered with Plaintiff's ability to exercise his

religion."  Doc. Ent. 11 at 9.  Then, defendants note, "[f]asting, by definition, means voluntarily

going without food.  Defendants' actions, as described above and in their respective affidavits,

were not objectively unreasonable in light of the current law."  Doc. Ent. 11 at 11-12.

On the other hand, relying on *Turner* and *O'Lone*, plaintiff argues that "[t]he

[c]onstitutional First Amendment free exercise right was clearly established prior to and during

_____

[26]In *Green*, Judge Neff approved and adopted the report and recommendation of Magistrate
Judge Scoville, which addressed due process, equal protection, free exercise, establishment clause
and RLUIPA claims against Assistant Food Service Director Almy.  *Green*, 685 F.Supp.2d at 693-
699.  Within the discussion of equal protection claims, the Court noted that "[t]he Eighth
Amendment's Cruel and Unusual Punishments Clause, applicable to the States through the
Fourteenth Amendment's Due Process Clause, provides plaintiff's substantive guarantees with regard
to caloric content of prison meals."  *Green*, 685 F.Supp.2d at 694.  Then, within the discussion of
free exercise claims, the Court concluded that "Almy [wa]s entitled to judgment in his favor as a
matter of law on plaintiff's Free Exercise claims."  *Green*, 685 F.Supp.2d at 695-698.  Thereafter,
the Court considered Almy's entitlement to qualified immunity.  *Green*, 685 F.Supp.2d at 702-704.

the time [he] raised his [F]irst [A]mendment free exercise claim." Therefore, he continues, "a reasonable person in the defendants['] positions would have known that going against policy mandated daily caloric recommendations, especially during the plaintiff's Holy month of Ramadan, would have resulted in some type of an infringement or undue burden being placed on his right to freely exercise his religious belief." Furthermore, he claims, "such actions on the part of the defendants provided no governmental interest, either legitimate or compelling." In sum, plaintiff argues, "defendants['] actions were objectively unreasonable in light of the clearly established Constitutional right[.]" Doc. Ent. 22 at 9.

However, for purposes of a qualified immunity analysis, if the Court agrees that the law was not clearly established that a prisoner fasting for Ramadan was entitled to the exact number of calories as the general population, then the Court need not address whether these defendants' actions were reasonable.

**F.    However, Defendants Purves and Spaulding Are Not Entitled to Summary Judgment as to Plaintiff's Claims against Them in Their Official Capacities for Injunctive or Declaratory Relief.**

**1.**    By his July 19, 2012 complaint, plaintiff sues defendants in both their personal[27] and official capacities. Doc. Ent. 1 at 1. Furthermore, plaintiff seeks injunctive relief, compensatory relief and punitive damages, as well as an award of costs. Doc. Ent. 1 at 7.

Defendants are entitled to summary judgment with regard to plaintiff's claims against them in their official capacities to the extent plaintiff seeks damages. This is so, because, to the

---

[27]"[P]ersonal capacity suits provide defendants with a potential defense of qualified immunity, which defense is unavailable in 'official capacity' litigation." *Harrington v. Grayson*, 764 F.Supp. 464, 476 (E.D. Mich. 1991) (Cook, J., accepting report and recommendation of Pepe, M.J.).

extent plaintiff sues defendants in their official capacities, it "is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71; *see also Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) ("It is undisputed that since Butler has been sued in her official capacity, Mingus's ADA claim is, for all intents and purposes, against the state of Michigan as the real party-in-interest."). Thus, plaintiff's claims against defendants in their official capacities are claims against the State of Michigan, and "the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). In other words, "[t]his bar remains in effect when State officials are sued for damages in their official capacity." *Graham*, 473 U.S. at 169 (citation omitted).

Furthermore, to the extent plaintiff's claim is based on RLUIPA, the Supreme Court has concluded that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver." *Sossamon v. Texas*, 131 S.Ct. 1651, 1663 (2011).

**2.**     As the United States Supreme Court has explained, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." *Papasan v. Allain*, 478 U.S. 265, 278 (1986). "On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Papasan*, 478 U.S. at 278.

33

Therefore, if the Court agrees with my foregoing conclusion that there remain genuine issues of material fact as to plaintiff's First Amendment or RLUIPA claims, then it should also conclude that defendants are not entitled to summary judgment with regard to those claims against them in their official capacities to the extent plaintiff seeks injunctive or declaratory relief. *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 6 (1st Cir. 2007) ("consistent with the Eleventh Amendment, Flores Galarza is amenable to suit in his official capacity for injunctive and declaratory relief, but is protected from damages in his personal capacity by the doctrine of qualified immunity."); *Ganther v. Ingle*, 75 F.3d 207, 210 (5th Cir. 1996) ("It is black letter law that the Eleventh Amendment does not apply to a request for a federal court to grant prospective injunctive relief against state officials on the basis of federal claims.") (citing *Ex Parte Young*, 209 U.S. 123, 149 (1908)).

## III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829

34

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/ Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: July 3, 2013




## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon William A.  Welch and Counsel of Record on this date.

Dated:  July 3, 2013                              s/ Lisa C. Bartlett
                                                 Case Manager

35